UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS A. WILLIAMS

           Plaintiff,

v.                                                   Case No. 21-cv-240-pp

BRIANNA TURNER, JOHN BIRDYSHAW,
and MARK PUTERBAUGH,

           Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2) AND SCREENING AMENDED COMPLAINT (DKT. NO. 10) UNDER 28 U.S.C. §1915A**

      Travis A. Williams, an inmate at Waupun Correctional Institution who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his rights under federal and state law. On March 24, 2021, before the court had screened the complaint, the plaintiff moved to amend his complaint and requested an extension of time to do so. Dkt. No. 7. The court granted the plaintiff's motion to amend but denied his request for an extension of time as unnecessary because there was no pending deadline for filing an amended complaint. Dkt. No. 9. On April 19, 2021, the plaintiff filed the amended complaint. Dkt. No. 10. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, and screens the amended complaint, dkt. no. 10.

I.  **Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA allows the court to give an incarcerated plaintiff the ability to proceed with his case without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prisoner account. Id.

On February 23, 2021, the court ordered the plaintiff to pay an initial partial filing fee of $8.89. Dkt. No. 5. The court received that fee on March 22, 2021. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him pay the remainder of the filing fee over time in the manner explained at the end of this order.

II.  **Screening the Amended Complaint**

A.  Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

2

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The amended complaint names John Birdyshaw, Brianna Turner and Mark Puterbaugh. Dkt. No. 10 at 1. But the plaintiff alleges harm from several other correctional officers at Waupun.

The amended complaint alleges that at 11:30 a.m. on November 27, 2020, the plaintiff was in the Restricted Housing Unit at Waupun. Id. at ¶1. Correctional officers Turner and Wasiley were passing out meals, when the plaintiff was having "serious pain inside [his] stomach." Id. at ¶¶2–3. Turner came to the plaintiff's cell door, and he showed her that he was vomiting some blood. Id. at ¶4. She allegedly responded that she was doing meal pass; the plaintiff alleges that both Turner and Wasiley walked away. Id. at ¶¶4-5.

The plaintiff alleges that he "start to panic" and pressed the emergency call button three times, but no one answered. Id. at ¶6. He continued trying to get help, and other inmates kicked their cell doors and called for emergency help. Id. at ¶7. At 12:10 p.m., Officer Westmen came to the plaintiff's cell and asked what the emergency was. Id. at ¶8. The plaintiff showed Westmen he was vomiting blood, but she allegedly "said ok and walked away . . . leav[]ing [him] in pain." Id. at ¶¶8-9. The plaintiff alleges that he became dizzy and "fail out," which the court infers means he passed out. Id. at ¶9. When the plaintiff "came back," multiple correctional officers were at his cell. Id. The plaintiff alleges he was still "in and out of consciousness" and could not understand what the officers were saying. Id. at ¶10. He says he was still in pain and vomiting blood, so he "refuse[d] to move" and "stayed still." Id. at ¶11.

4

The plaintiff alleges that Captain Sancez, Lieutenant Nelson and Correctional Officers Birdyshaw, Turner, Wasiley, Ligpaid, Westmen, Puterbaugh and Valliancourt all entered his cell. Id. at ¶12. He says "[a]ll CO came in on [him] as they will do a[] Disruptive inmate." Id. at ¶13. He alleges that unspecified officers were "on [his] neck twisting [his] hands [and] wrist on [his] back seeing that [he was] vomit[]ing blood in a large amount." Id. at ¶14. The plaintiff says that, given his medical condition, he "would of thought they will Be a[ ]little more easy." Id.

The plaintiff alleges that Birdyshaw "was twisting [his] wrist as an Inmate that was disobeying order and being Disruptive very excessive us[]ing a[ ]lot of force that was not needed for this matter." Id. at ¶15. The plaintiff alleges that "the CO continued to be excessive" by twisting his wrist "extrem[e]ly hard [while] pulling and yanking [his] head back very hard making it very hard for [him] to breathe" and making him gasp for air. Id. at ¶16. He says neither Sancez nor Nelson told Birdyshaw to stop despite hearing the plaintiff's yelling in pain and seeing him continue to vomit blood. Id. at ¶17.

The plaintiff arrived at the Health Services Unit (HSU), where Dr. Jeanpierre (who is not a defendant) told "all DOC staff" about the plaintiff's condition, told them "it can get worser" and recommended placing the plaintiff in an observation cell. Id. at ¶18. Nelson refused the recommendation and told the doctor "observation cell[s] are not for that." Id. The plaintiff instead "was place[d] inside strip cage #1." Id. at ¶19. The plaintiff alleges that Birdyshaw "continued being excessive by chaining [his] hands to the strip cage door

5

behind [his] back extremely tight with leg cuffs on as well." Id. The plaintiff alleges that "the CO" placed a chair inside the cage and told the plaintiff to sit facing forward. Id. at ¶20. The plaintiff asked how he could do that, but the CO told him to "find a[ ]way." Id. The plaintiff says he was still vomiting blood and crying, and he asked if he could be handcuffed in front instead. Id. He alleges that the CO said, "no make it work." Id. The plaintiff asserts that he cried for the handcuffs to be placed in front of him and that multiple COs denied the request and he still was in pain. Id. at ¶21

The plaintiff says he "continued to seek help but did not get it." Id. at ¶22. He alleges that his wrist had turned purple, and he believed it was broken. Id. He also says his wrist, neck and legs were swollen. Id. Instead of being provided medical treatment, he "was returned to [his] cell." Id. The plaintiff says he was still in pain, vomiting and asking for medical attention. Id. at ¶23. He says unnamed persons denied him medical attention and "called [him] a liar." Id.

The plaintiff alleges that on November 28, 2020 at 10:15 p.m., he "seen the CO" (he does not say which one) and asked him "why was he so excessive." Id. at ¶25. The officer responded, "next time you will think about that before you fake." Id. The officer then stopped at inmate Antonio Ortiz's cell and said, "write ortiz [sic] anybody can fake." Id.

The plaintiff alleges that weeks later, on December 15, 2020, blood began to "come out [his] mouth and nose." Id. at ¶24. He "was rush[ed] to the

emergency room" that day and the next morning "for the same reason vomit[]ing blood." Id. He does not allege what treatment he received, if any.

The plaintiff asserts that "[a]ll of these CO failed to act and protect [him] during [his] medical issue and needs." Id. at ¶26. He alleges that he suffered "wrist [and] neck problems" from the incident and continues to seek medical attention. Id. He says he has "had multiple xrays [due] to excessive force." Id. He also alleges that Puterbaugh wrote a conduct report against him, "[b]ut the report was thrown away dismiss." Id. at ¶27. He asserts that "[t]he CO know that [his] condition was a serious matter but did not take it serious and wrote [him] up in retaliation for being sick." Id. at ¶28. The plaintiff seeks damages "from all Defendants for this matter." Id. at ¶29. The plaintiff checked boxes indicating that he seeks to sue under federal and state law and wants $50,000. Id. at 8. He says he "will just like the following relief no matter what [he] ask for things will not change in the Doc." Id.

C. Analysis

The plaintiff says that Turner, Wasiley and Westmen ignored his complaints of pain and request for medical attention. Those allegations suggest a claim of deliberate indifference, which arises under the Eighth Amendment's prohibition against cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id.

The subjective component of an Eighth Amendment violation requires the plaintiff to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Id. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez, 792 F.3d at 776 (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that he told Turner and Wasiley he "was having serious pain inside [his] stomach" and showed Turner that he was vomiting blood. Dkt. No. 10 at ¶¶3-4. Yet the officers allegedly continued passing out meals and did not call for help or do anything to aid the plaintiff. He alleges that Officer Westmen responded to his cries for help. But when he showed her that he was vomiting blood, she allegedly "said OK and walked away" and left him in his cell in pain without calling for help. Id. at ¶¶8-9. A reasonable officer who witnessed an incarcerated person vomiting blood would have reason to suspect that person had a serious medical condition requiring medical attention. Yet none of these officers allegedly took any action to help the plaintiff during his medical emergency. The amended complaint sufficiently alleges that Turner, Wasiley and Westmen were aware of yet disregarded the plaintiff's objectively serious medical issue. The court will allow the plaintiff to proceed on an Eighth Amendment claim against these officers.

The plaintiff alleges that several correctional officers violently pulled him from his cell and took him to the HSU. The court analyzes these allegations of excessive force under the Eighth Amendment. See Hudson v. McMillian, 503

8

U.S. 1, 5 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)) ("'[T]he unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment.'"). In the context of a claim of excessive force, the plaintiff must show that (1) "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation," and (2) "'the officials act[ed] with a sufficiently culpable state of mind.'" Id. at 8 (quoting Wilson v. Seiter, 501 U.S. 294, 298, 303 (1991)). The "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 6 (citing Whitley, 475 U.S. at 320–21).

The amended complaint alleges that Birdyshaw forcefully removed the plaintiff from his cell, applied unnecessarily tight handcuffs, twisted the plaintiff's wrist and pulled and yanked on his head and neck when he took the plaintiff to the HSU for examination.[1] The plaintiff allegedly was suffering a medical emergency at the time, which caused him to vomit blood. The amended complaint does not suggest that the plaintiff was resisting or fighting the officers who entered his cell. It alleges the plaintiff "stayed still" but also that he "refuse[d] to move" because of his medical condition. Dkt. No. 10 at ¶11. Although the officers may have told the plaintiff to get up or come with them, he says he was "in and out of consciousness" and could not understand what they were saying. Id. at ¶10. Birdyshaw allegedly continued to use unnecessary

---

[1] In some paragraphs, the amended complaint refers to "Birdyshaw," while in others, it refers to "the CO." Because the paragraphs refer to the same allegations, the court assumes that "the CO" is Birdyshaw.

9

force while escorting the plaintiff to the strip cage and handcuffed him to the wall. The plaintiff says he suffered injuries to his wrists, neck and back. The plaintiff says that an officer later told the plaintiff that he used force because he believed the plaintiff was faking his medical emergency. The court infers that this officer was Birdyshaw. These allegations suggest that Birdyshaw used force, not to maintain or restore discipline, but to cause the plaintiff harm as punishment for faking the emergency. The court construes the allegations as true for the purposes of screening. So construed, the court concludes that the allegations satisfy the objective and subjective components of an Eighth Amendment claim. The court will allow the plaintiff to proceed on this claim against Birdyshaw.

The allegations against the other officers are less specific. The amended complaint alleges generally that "[a]ll CO came in on [the plaintiff] as they will do an Disruptive inmate" and twisted his hands and wrists. Dkt. No. 10 at ¶¶13-14. Compared to the allegations against Birdyshaw, who the amended complaint specifically alleges twisted the plaintiff's wrist and pulled and yanked his head back, this allegation is vague. Id. at ¶¶15-16. Allegations made in this collective fashion against numerous defendants (here eight correctional officers) usually do not comply with Federal Rule of Civil Procedure 8 and do not state a claim against those defendants. See, e.g., Burnett v. Chapman, No. 19-CV-00628-SMY, 2019 WL 4167086, at *3 (S.D. Ill. Sept. 3, 2019); Moore v. Corizon Health Inc., No. 17-cv-00987-SEB-DML, 2018 WL 1522658, at *5 (S.D. Ind. Mar. 28, 2018); Young Est. of Young v. Peoria Cty., Ill., No. 1:16-CV-01367-

10

Case 2:21-cv-00240-PP    Filed 05/26/22    Page 10 of 17    Document 13

JBM, 2017 WL 3741551, at *4 (C.D. Ill. Aug. 30, 2017); Simpson v. Grams, No. 07-C-493-C, 2007 WL 5581683, at *1 (W.D. Wis. Sept. 11, 2007). The plaintiff instead must allege specifically how each defendant "personally participated in or caused the unconstitutional actions." Alejo v. Heller, 328 F.3d 930, 936 (7th Cir. 2003) (citing Duncan v. Duckworth, 644 F.2d 653, 655 (7th Cir. 1981)). It is unlikely that all eight officers simultaneously entered the plaintiff's cell (especially in restricted housing) and grabbed and twisted his hands and wrists in the same way. The plaintiff's general allegations stated in the same way against every officer do not explain how each officer *personally* was involved in the alleged conduct.

Nonetheless, the standard at screening is low, and the court can infer from the allegations that these officers all were in some way involved in aggressively extracting the plaintiff from his cell and escorting him to the HSU. Even though each officer's specific behavior was likely different, the amended complaint says all eight officers saw that the plaintiff was in pain and vomiting blood yet either used or allowed others to use excessive force. The officers who did not themselves use excessive force still may be liable for the other officers' actions if the plaintiff can show they "(1) had reason to know that a fellow officer was using excessive force or committing a constitutional violation, and (2) had a realistic opportunity to intervene to prevent the act from occurring." Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009) (citing Chavez v. Ill. State Police, 251 F.3d 612, 652 (7th Cir. 2001); and Harper v. Albert, 400 F.3d 1052, 1064 (7th Cir. 2005)). The amended complaint alleges that Sancez

11

and Nelson are liable for this reason—they witnessed Birdyshaw's use of excessive force, heard the plaintiff's complaints of pain and saw his continued vomiting but did nothing to intervene.

Although the allegations against the other officers are vague, they name each officer and note the date, time and place of the allegedly unconstitutional conduct. Liberally construing the allegations, the court concludes they are specific enough to put the officers on notice of their behavior that the plaintiff says violated his constitutional rights. Although the allegations are sparse and vague, the court will allow the plaintiff to proceed on an Eighth Amendment claim against Turner, Wasiley, Nelson, Sancez, Ligpaid and Westmen for either using excessive force or failing to act to stop other officers from using excessive force. The plaintiff will need to provide specific evidence of each officer's involvement to defeat a motion for summary judgment.

The plaintiff also alleges that Nelson refused to allow him to be held in an observation cell. He says he instead was placed in "strip cage 1#." Dkt. No. 10 at ¶19. The plaintiff does not allege whether Nelson or another officer ordered him housed in the strip cage instead of the observation cell. Nor does he allege whether he suffered harm from being in the strip cage (except as alleged against Birdyshaw). The court cannot infer from the amended complaint that Nelson violated the plaintiff's rights by placing him in the strip cage (if he is the one who ordered it) instead of the observation cell. The amended complaint does not state a claim against Nelson or any other officer related to the plaintiff's placement in the strip cage.

The amended complaint alleges that Puterbaugh wrote a conduct report against the plaintiff in retaliation for the plaintiff "faking" his illness. The court analyzes these allegations under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity, he suffered a deprivation likely to prevent future protected activities, and there was a causal connection between the two." Felton v. Huibregtse, 525 F. App'x 484, 486 (7th Cir. 2013) (citing Watkins v. Kasper, 599 F.3d 791, 794 (7th Cir. 2010); and Bridges, 557 F.3d at 546).

Protected activity normally involves the prisoner expressing concern or dissatisfaction with prison conditions, such as by filing an inmate complaint or lawsuit. See Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (complaints and grievances); Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020) (lawsuits). The plaintiff has not alleged that he engaged in that kind of conduct. He says Puterbaugh incorrectly believed he was faking his illness and issued him a conduct report because of it. It is possible that the plaintiff's request for medical treatment is protected activity under the First Amendment. See West v. McCaughtry, 971 F. Supp. 1272, 1277 (E.D. Wis. 1997) ("If a prisoner were disciplined solely because of his requests for proper medical treatment, it would surely be a constitutional violation."); see also James v. Gage, No. 15-CV-106 (KMK), 2019 WL 6251364, at *6 (S.D.N.Y. Nov. 21, 2019) (assuming without deciding "that requests for medical attention are protected by the First Amendment for the purpose of analyzing the merits of a retaliation claim").

13

But even if the court assumes the plaintiff's conduct is protected activity, he has not alleged that he suffered a deprivation. He says Puterbaugh wrote a conduct report, but "the report was thrown away [and] dismiss[ed]." Dkt. No. 10 at ¶27. A dismissed conduct report that did not lead to discipline is not "likely to prevent future protected activities." If anything, the fact that the report was dismissed vindicates the plaintiff's assertion that he was suffering a medical emergency, and the officers used unnecessary and excessive force. The plaintiff does not state a claim of retaliation against Puterbaugh.

Finally, the plaintiff checked a box to signify that he wishes to proceed under state law. Dkt. No. 10 at 8. But he alleges that he and all defendants are citizens of Wisconsin. The plaintiff has not demonstrated complete diversity of citizenship and may not proceed under diversity jurisdiction. See 28 U.S.C. 1332(a). To the extent he wishes to proceed on state law claims, the plaintiff has not alleged facts to support such claims. The plaintiff does not say what conduct he believes violated a state law or what state law or laws he believed the defendants' actions violated. Although the court may draw reasonable inferences from the facts in the plaintiff's favor, it cannot infer a cause of action for him. The plaintiff has not stated a claim for violation of any rights under state law. He may proceed under federal law only.

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ADDS** Captain Sancez, Lieutenant Nelson and Correctional Officers Wasiley, Westmen and Ligpaid as defendants and **DIRECTS** the Clerk of Court to add those defendants to the docket.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the amended complaint and this order to the Wisconsin Department of Justice for service on defendants Turner, Birdyshaw, Puterbaugh, Sancez, Nelson, Wasiley, Westmen and Ligpaid. Under the informal service agreement, the court **ORDERS** the defendants to respond to the amended complaint within 60 days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$341.11** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Waupun Correctional Institution.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are in custody at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are in custody at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

advised of his address may result in the court dismissing the case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin this 26th day of May, 2022.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**