UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

TRAVIS A. WILLIAMS,

        Plaintiff,

    v.                                     Case No. 21-cv-240-pp

BRYANNA TURNER, JOHN BIRDYSHAW,
MARK PUTERBAUGH, NICHOLAS SANCHEZ,
THOMAS NELSON, PETER WASYLIW,
KAITLYN GOULD and TANNER LEOPOLD,

        Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT (DKT. NO. 19) AND GRANTING PLAINTIFF'S MOTION TO
WITHDRAW (DKT. NO. 24)**

---

Plaintiff Travis A. Williams is incarcerated and is proceeding under 42

U.S.C. §1983 on claims against officials at Waupun Correctional Institution.

The defendants have moved for partial summary judgment on the ground that

the plaintiff failed to exhaust his administrative remedies for some of his claims

before filing his complaint. Dkt. No. 19. The plaintiff has not opposed the

motion. But he has moved to voluntarily dismiss defendant Bryanna[1] Turner.

Dkt. No. 24. The court will grant that motion and dismiss defendant Turner.

---

[1] The court had been using the spelling "Brianna" for defendant Turner's first
name because that is the spelling the plaintiff used in his complaint and
amended complaint, and defense counsel used the same spelling in their
notices of appearance. Dkt. Nos. 1, 10, 14 and 16. Defense counsel since has
used the spelling "Bryanna" in the answer to the plaintiff's amended complaint
and in the motion for summary judgment. Dkt. Nos. 17, 19. The court will use
the spelling "Bryanna" in this order and will direct the clerk to update the
spelling on the docket.

1

The court finds that the plaintiff exhausted his administrative remedies for only his claim against defendant John Birdyshaw. The court will dismiss without prejudice all other claims and defendants.

## I.    Facts

### A.    Procedural Background

On February 22, 2021, the court received the plaintiff's complaint asserting claims against correctional officer Turner. Dkt. No. 1. About a month later, the plaintiff moved to amend his complaint and requested an extension of time to do so. Dkt. No. 7. The court granted the plaintiff's motion to amend but denied his request for an extension of time as unnecessary because there was no pending deadline for filing an amended complaint. Dkt. No. 9.

On April 19, 2021, the court received from the plaintiff an amended complaint. Dkt. No. 10. The court screened the amended complaint and added defendants Birdyshaw, Mark Puterbaugh, Nicholas Sanchez (sued as "Captain Sancez"), Thomas Nelson (sued as "Lieutenant Nelson"), Peter Wasyliw, Kaitlyn Gould (née Westman) and Tanner Leopold (sued as correctional officers "Wasiley," "Westmen" and "Ligpaid") as defendants. Dkt. No. 13. The court allowed the plaintiff to proceed on Eighth Amendment claims of deliberate indifference against Turner, Wasyliw and Gould; excessive force against Birdyshaw; and excessive force or failing to act to stop other officers from using excessive force as to Turner, Wasyliw, Nelson, Sanchez, Leopold and Gould. Id. at 7–12.

On July 26, 2022, the court issued a scheduling order, setting a deadline of September 9, 2022 for the defendants to file a motion for summary judgment on the ground that the plaintiff failed to exhaust his administrative remedies. Dkt. No. 18. At the September 9, 2022 deadline, the defendants moved for partial summary judgment on exhaustion grounds. Dkt. No. 19. On September 16, 2022, the court ordered that by October 10, 2022, the plaintiff must respond to the defendants' motion, arguments and proposed findings of fact. Dkt. No. 23. The court warned the plaintiff that if he did not respond to the defendants' motion by that deadline, the court would "treat the defendants' motion as unopposed, accept all facts asserted by the defendants as undisputed and decide the motion based only on the arguments in the defendants' brief, without any input from the plaintiff." Id. at 2.

The October 10, 2022 deadline has passed, and the plaintiff has not responded to the defendants' motion or disputed the defendants' proposed findings of fact. Consistent with its previous order, the court considers the defendants' proposed findings of fact to be undisputed for purposes of this decision.

B.    Plaintiff's Motion to Withdraw (Dkt. No. 24)

On October 14, 2022, the plaintiff filed a "Motion to Withdraw." Dkt. No. 24. The motion says that the plaintiff "put this motion together for the courts on the following matter against the defendant but lack of response on [the plaintiff's] end and errors [he] bring[s] to the courts that [he] will no longer have [B]rianna Turner as a defendant." Id. The plaintiff asks the court "to remove the

3

defendant on case no. 21-cv-240-PP . . . but keep the others as defendants." <u>Id.</u> The defendants do not oppose this motion. Dkt. No. 25.

Under Federal Rule of Civil Procedure 41, the plaintiff may dismiss a case (or a defendant in that case) by filing "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment;" or "a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(i)–(ii). The defendants have moved for summary judgment and the parties have not provided the court with a stipulation signed by all parties. The court therefore may dismiss a defendant "at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). A dismissal under Rule 41(a)(2) is without prejudice, unless otherwise stated. <u>Id.</u>

The plaintiff concedes in his motion to withdraw that there has been a "lack of response" on his end and "errors." Dkt. No. 24. Arguably, this motion serves as a response to Turner's motion for summary judgment, and the plaintiff responds by asking the court to dismiss Turner as a defendant. The court will grant the plaintiff's motion and will dismiss Turner without prejudice. Whether the court will grant the plaintiff's request to "keep the others as defendants," <u>id.</u>, depends on whether the defendants have shown the plaintiff failed to exhaust his administrative remedies for his claims against them.

4

C.    Factual Background

      1.    *WCI-2020-20645*

On November 30, 2020, the institution complaint examiner's office received a complaint that the plaintiff had signed one day earlier. Dkt. No. 22-2 at 10. The complaint alleged that on November 27, 2020, "ofc Birdyshaw us[e] force on [him] that was not need it as [he] was having a medical condition bye twisting [his] arm and [w]rist." Id. The complaint detailed the event, saying that Birdyshaw put the plaintiff in a "hold cell with [his] hand cuffed behind [his] back and another c[h]ain to the door with leg cuffs on as well" and told him "to sit on the floor causing [his] [w]rist to be mess up." Id. The complaint alleged that the plaintiff asked Birdyshaw "why he us[e] that type of force on [him] and he said next time don[']t fake your condition." Id. The complaint alleged that Birdyshaw's body camera was on and recording and that it was recording earlier when Birdyshaw chained the plaintiff to the door. Id.

The same day the complaint examiner's office received the plaintiff's complaint, an institution complaint examiner "immediately referred" the matter to the Warden's office "for further processing" because of "the nature of the allegations." Id. at 2. The complaint examiner recommended dismissing the complaint. Id. On December 10, 2020, Waupun Warden Randall Hepp reviewed the complaint examiner's recommendation, noted that "[a] copy of this complaint will be provided to Sec[urity] Dir[ector] to review the information and to initiate any appropriate actions" and dismissed the complaint. Id. at 3.

5

On December 10, 2020—the same day that Warden Hepp dismissed the complaint—the plaintiff signed an appeal from the dismissal of his complaint. Id. at 11. The appeal said that on November 28, 2020 (not November 27), Officer Birdyshaw "came to [his] door" with his body camera recording "and said he use excessive force on [the plaintiff] and all [the plaintiff] was having a medical condition but he thought [the plaintiff] was faking [his] condition." Id. The appeal indicated that the plaintiff had "records of this sickness and [Birdyshaw] use excessive force on [him] is this how sick and ill people get treated[?]" Id. The plaintiff ended his appeal by noting that on November 27, 2020, he "was treated bad and wrong by members of the DOC and will like for Inmate Appeals to protect [his] rights for once's [sic] that's all." Id.

On December 21, 2020, the corrections complaint examiner's office received the plaintiff's appeal. Id. at 4. The next day, a corrections complaint examiner recommended dismissing the appeal, noting that the "matter was referred to [Waupun] Administration and reviewed. This was confirmed by the warden. There is no further action required through the ICRS [Inmate Complaint Review System]." Id. at 6. On January 11, 2021, the Office of the Secretary accepted the corrections complaint examiner's decision and dismissed the plaintiff's appeal. Id. at 5.

2.    *WCI-2021-588*

On January 7, 2021, the plaintiff signed a different complaint related to the November 27, 2020 incident. Dkt. No. 22-3 at 6. This complaint alleged that "ofc turner was work[i]n[g] A-rang[e] when [the plaintiff] was having an

medical issue and did not stop when [he] called out for help." Id. The details of the complaint reiterate that the plaintiff was having "a medical issue and the work[i]n[g] ofc did not stop to see what the medical problem was." Id. The complaint also asserted, "this is [the plaintiff's] 8th time writ[i]n[g] about this issue and [he] have one in about this complaint that [he] sent 45 days ago but you keep av[oi]ding all [his] complaints and sending them back[.]" Id. The complaint ends, "Please send me a better respon[se]." Id.

The institutional complaint examiner's office received the plaintiff's complaint on January 11, 2021. Id. at 1. The complaint examiner rejected the complaint as untimely because the plaintiff filed it more than fourteen days after the incident date of November 27, 2020. Id. at 2. The complaint examiner cited §DOC 310.07(2), which requires that incarcerated persons "file a complaint within 14 days after the occurrence giving rise to the complaint." Id. The complaint examiner noted that the plaintiff "ma[de] no plea for good cause" to excuse his untimely complaint and "[did] not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence." Id.

The plaintiff did not appeal the complaint examiner's rejection of his complaint as untimely. Dkt. No. 21 at ¶10; Dkt. No. 22 at ¶27.

3. *January 27, 2021 Return Letter and Returned Complaint*

On January 25, 2021, the plaintiff signed another complaint related to the November 27, 2020 incident. Dkt. No. 22-4 at 2. This complaint alleged that "ofc turner did not stop for [his] medical emergency." Id. The plaintiff noted

7

that "this is [the plaintiff's] 14th I.C.E about the same complaint and [he] submitte[d] one on Dec 11 at 8pm and it came to inmate complaints but was never sent back at all with no respon[se]." Id. The complaint alleged that "you tell me it's over the 14 days limit when [the plaintiff] filed more than one complaint expressing the issue so where is [his] first I.C.E that never got rejected[?] It was in the mail so [he] no [sic] you got it." Id. The complaint asserted that the plaintiff had "all the one's you sent back and [he] made copy's of this one." Id. The complaint stated, "Stop playing and send [the plaintiff his] I.C.E of this incident or [he] will just go right to Madison." Id.

On January 27, 2021, an institutional complaint examiner sent the plaintiff a letter explaining, "The submission received on 01/27/2021 is not accepted" because it contains more than "one clearly identified issue." Id. at 1 (citing DOC 310.07(5)). The letter clarified, "This is a return, not a rejection, and you have the opportunity to fix identified errors." Id. The letter explained that the complaint "has two separate issues. One is regarding a complaint decision and one is regarding CO Turner. Please separate your issues." Id. The letter advised the plaintiff to "resubmit with clarifications to meet the filing requirements of DOC 310." Id.

The plaintiff did not resubmit his complaint with clarifications as the complaint examiner directed. Dkt. No. 21 at ¶14; Dkt. No. 22 at ¶31.

4.    *WCI-2021-1961*

On February 2, 2021, the plaintiff signed yet another complaint about the November 27, 2020 incident. Dkt. No. 22-5 at 8. Like the others, the

complaint alleged that while the plaintiff was in the Restricted Housing Unit, he "had an medical emergency[;] the ofc Turner was work[i]n[g] lower A-rang[e] but did not stop to see what the emergency was." Id. The complaint asserted that the plaintiff had attempted to resolve this issue with "everyone [he] could to keep being rejected," including Captain Sanchez and Lieutenant Nelson. Id. The complaint said that "this [is the plaintiff's] 16th complaint and none of [his] complaint[s] still have not been resolve[d]." Id. The complaint reiterates that "the ofc failed to see what [his] emergency" was and "failed to stop and see what was wrong with [him] as [he] was having an serious medical condition." The complaint ends with "please for the 16th time please do something." Id.

The next day, February 3, 2021, the institutional complaint office received the plaintiff's complaint. Id. at 1. As with WCI-2021-588, the complaint examiner cited §DOC 310.07(2) and rejected the complaint as untimely because the plaintiff had filed it more than fourteen days after the alleged incident date. Id. at 2. The complaint examiner noted that the plaintiff "makes no plea for good cause" and "does not present evidence to show how he was denied the use of or inhibited in any way from using the ICRS since the date of the occurrence." Id.

A week later, on February 10, 2021, the plaintiff signed a request for review of the rejected complaint. Id. at 9. The review request reiterated that it was the plaintiff's "16th complaint" about the same incident and that "on 12/11 [he] put an complaint in and never got an receipt at all so now for [him] to get rejected because it[']s over the 14th day [he's] been putting complaint in

and also have all the complaints that got sent back." Id. The review request asserted that "this is not fair" and said he "just ask for the officer to do th[ei]r job nothing more." Id. The review request asserted that the plaintiff was "not in the wrong" and asked, "can someone please do something for one time[?]" Id.

Warden Hepp, acting as the reviewing authority, received the review request on February 17, 2021, but did not acknowledge receipt until the next day—February 18, 2021. Id. at 5. On February 19, 2021, Warden Hepp rejected the appeal as itself untimely. Id. There is no evidence in the record that the plaintiff attempted to appeal that decision.

## II.    Discussion

### A.    Summary Judgment Standard

A party is entitled to summary judgment if it shows that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are those that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.

Summary judgment is proper "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). To survive a motion for summary judgment, a non-moving party must show that sufficient evidence

exists to allow a jury to return a verdict in its favor. Brummett v. Sinclair Broad. Grp., Inc., 414 F.3d 686, 692 (7th Cir. 2005).

B.    Exhaustion

Under the Prison Litigation Reform Act, an incarcerated person cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see Woodford v. Ngo, 548 U.S. 81, 93 (2006). To comply with §1997e(a), an incarcerated person must "properly take each step within the administrative process." Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).

The Court of Appeals for the Seventh Circuit applies a "strict compliance approach to exhaustion," Dole v. Chandler, 438 F.3d 804, 809 (7th Cir. 2006), and expects incarcerated persons to adhere to "the specific procedures and deadlines established by the prison's policy," King v. McCarty, 781 F.3d 889, 893 (7th Cir. 2015) (citing Woodford, 548 U.S. at 93). That means if the plaintiff failed to complete any step in the prison's exhaustion process before bringing his lawsuit, the court must dismiss the plaintiff's claims. See Perez v. Wis. Dep't of Corrs., 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, the defendants bear the burden of proving that the plaintiff failed to exhaust. See Pavey v. Conley, 544 F.3d 739, 740–41 (7th Cir. 2008) (citing Jones v. Bock, 549 U.S. 199, 216 (2007)). If the defendants satisfy

that burden, the court must dismiss the unexhausted claims and defendants without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004) (explaining that "*all* dismissals under § 1997e(a) should be without prejudice").

Wisconsin established the ICRS to allow incarcerated persons to file complaints about policies, rules, living conditions, and staff actions at their institutions. Wis. Admin. Code §DOC 310.06. Incarcerated persons must exhaust all administrative remedies that the Department of Corrections has promulgated by rule before commencing a civil action against an officer, employee, or agent of the Department. Id. §DOC 310.05. Although institutional complaints "need not lay out the facts, articulate legal theories, or demand particular relief," they must "alert[] the prison to the nature of the wrong for which redress is sought." Strong v. David, 297 F.3d 646, 650 (7th Cir. 2002).

An incarcerated person must file a complaint within fourteen calendar days of the incident, but a complaint examiner has discretion to accept a late complaint for good cause. Wis. Admin. Code §DOC 310.07(2). If the complaint is filed beyond the fourteen-day deadline, the incarcerated person may request to file it late and provide the reason for the late filing. Id. Each institutional complaint "may contain only one clearly identified issue" and "must contain sufficient information for the department to investigate and decide the complaint." Id. §DOC 310.07(5)–(6).

The complaint examiner may accept, return or reject the complaint. Id. §DOC 310.10(2). If the complaint examiner accepts or rejects the complaint, she must assign a file number and classification code to the complaint and

provide notice to the incarcerated person that the complaint was received. Id. §DOC 310.10(3)–(4). The complaint examiner may return a complaint if it violates §DOC 310.07(1) or (3)–(5) and allow the incarcerated person an opportunity to correct and resubmit the returned complaint. Id. §DOC 310.10(5). The incarcerated person receives only one opportunity to correct a returned complaint and must resubmit the corrected complaint within ten calendar days. Id. The incarcerated person must appeal any adverse decision within fourteen days of the decision and await a final decision from the Office of the DOC Secretary. Id. §§DOC 310.12 & 310.13.

C.    Analysis

1.    *WCI-2020-20645 – Defendant Birdyshaw*

The defendants concede that the plaintiff exhausted his administrative remedies for his claim against Birdyshaw by filing complaint WCI-2020-20645, appealing the dismissal of the complaint to the corrections complaint examiner and awaiting the final decision from the Office of the Secretary. Dkt. No. 20 at 4. That final decision was issued on January 11, 2021, about a month before the plaintiff brought his §1983 lawsuit. The court agrees that the plaintiff properly exhausted his administrative remedies for his claim of excessive force against defendant Birdyshaw and will allow him to proceed on that claim.

This complaint does not allege, however, that any other officer was present or involved in Birdyshaw's use of excessive force. The plaintiff's *appeal* from the dismissal of his complaint alleges, for the first time, that on November 27, 2020, "members of the DOC" treated him "bad and wrong," and he "will like

for Inmate Appeals to protect [his] rights." Dkt. No. 22-2 at 11. The plaintiff is not required to identify each sued individual in his grievance to properly exhaust his administrative remedies against those persons. See Jones, 549 U.S. at 219 ("[E]xhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."). But to exhaust administrative remedies under Wisconsin's administrative rules, an incarcerated person "must first raise the issue by filing an inmate complaint at the institution level." Hiler v. Pollard, No. 07-C-863, 2009 WL 188027, at *3 (E.D. Wis. Jan. 27, 2009) (citing Wis. Admin. Code §§DOC 310.07(1), 310.09(1)). Raising an issue for the first time in the *appeal* of a dismissed complaint violates Wisconsin's procedural rules and does not properly raise or exhaust administrative remedies for that issue. Id. (citing Pozo, 286 F.3d at 1023) ("[A]n issue raised for the first time in an appeal to the CCE is not an exhausted issue."). That means that even though this complaint properly exhausted his claim against Birdyshaw, the plaintiff did not exhaust his claim that other "members of the DOC" mistreated him by vaguely alluding to that claim in his appeal from the denial of his complaint against Birdyshaw.

2.    *WCI-2021-588*

The plaintiff signed complaint WCI-2021-588 on January 7, 2021, and the complaint examiner's office received it four days later. This complaint also addresses issues from the November 27, 2020 incident but alleges only that Officer Turner was involved and failed to stop and address the plaintiff's medical emergency. It is undisputed the plaintiff filed this complaint beyond

14

the fourteen-day deadline set in Wis. Admin. Code §DOC 310.07(2) and did not provide a reason for his late filing. The complaint examiner rejected the plaintiff's complaint because it was not filed within fourteen days of the November 27, 2020 incident, and did not consider the merits of the complaint.

A complaint that is *rejected* for procedural reasons (including its untimeliness), rather than *dismissed* after a determination on the merits, does not exhaust administrative remedies. See Conyers v. Abitz, 416 F.3d 580, 584 (7th Cir. 2005) (citing Pozo, 286 F.3d at 1025). Because it is undisputed that the plaintiff did not timely file this complaint, it could not have exhausted his administrative remedies for his claim against Turner.

Even if the plaintiff had timely filed this complaint, and even if the complaint examiner had dismissed it on the merits instead of rejecting it for being untimely, it also is undisputed that the plaintiff did not appeal the complaint examiner's decision to a corrections complaint examiner or the Office of the Secretary as §§DOC 310.12 & 310.13 require. That means the plaintiff did not "take each step within the administrative process." Pozo, 286 F.3d at 1024. The defendants have met their burden to show that the plaintiff failed to exhaust his administrative remedies for this complaint and the claim it asserts against Turner.[2]

_____

[2] The court notes that this complaint asserts only that Turner was involved in the November 27, 2020 incident. The court is granting the plaintiff's motion to dismiss Turner, but because the complaint does not describe what Turner allegedly did to violate the plaintiff's rights, the court would have dismissed the claim against Turner even if the plaintiff had properly exhausted his administrative remedies on the claim.

This complaint also alleges that the plaintiff's past complaints about the same issues were returned but that he had "one in about this complaint." Dkt. No. 22-3 at 6. The court presumes the plaintiff was referring to WCI-2020-20645 against Birdyshaw, which he filed on November 30, 2020. By the time the plaintiff filed this second complaint, he had received a response to WCI-2020-20645, had filed an appeal from the dismissal of that complaint and the corrections complaint examiner had recommended dismissing the appeal. Dkt. No. 22-2 at 2–6. His statement in this second complaint that all his past complaints were returned or that the complaint examiner was "av[oi]ding" them is incorrect. Dkt. No. 22-3 at 6. There is no evidence in the record that the past complaints that the plaintiff alleges were returned or "avoided." There is no evidence that any other complaints the plaintiff attempted to file about this issue had been returned to him when he filed this second complaint.

### 3. *January 27, 2021 Returned Complaint*

It is undisputed that on January 27, 2021, the complaint examiner's office received another complaint from the plaintiff regarding his claim that Turner did not stop and assist him during his medical emergency on November 27, 2020. Rather than accept or reject this complaint, the complaint examiner returned the complaint to the plaintiff with a letter explaining that she was returning the complaint because it contained two separate issues, in violation of Wis. Admin. Code §DOC 310.07(5). The complaint examiner instructed the plaintiff to "fix [the] identified errors" and resubmit his complaint. Dkt. No. 22-4 at 1.

Under §DOC 310.10(5), the plaintiff had ten days to correct and resubmit the returned complaint. It is undisputed that he did not follow the complaint examiner's instructions and did not resubmit the complaint. There is no evidence that he took any other action on this complaint whatsoever. Because the plaintiff did not follow the "specific procedures and deadlines established by" Wisconsin's administrative code for refiling returned complaints, King, 781 F.3d at 893, he did not exhaust his administrative remedies for this complaint.

4.  *WCI-2021-1961*

The plaintiff signed complaint WCI-2021-1961 on February 2, 2021, and the institutional complaint examiner's office received it the next day. This complaint reiterates the plaintiff's claim that Turner did not stop to help him when he was having a medical emergency on November 27, 2020. As with WCI-2021-588, the complaint examiner rejected this complaint as untimely because the plaintiff filed it beyond the fourteen-day time limit in §DOC 310.07(2). The complaint examiner entered the rejection on February 3, 2021. Dkt. No. 22-5 at 2. Under §DOC 310.10(10), the plaintiff had ten days to appeal the rejection—until February 13, 2021.

Unlike WCI-2021-588, the plaintiff appealed the rejection of WCI-2021-1961. He dated his appeal February 10, 2021, which is only seven days after the complaint examiner entered her decision rejecting the plaintiff's complaint. Under §DOC 310.10(10), the plaintiff's appeal should have been considered timely filed. But the Warden (acting as the reviewing authority) did not receive the plaintiff's appeal until February 17, 2021, and curiously did not

acknowledge receipt of the appeal until the next day—February 18, 2021. Id. at 4–5. The Warden rejected the appeal as untimely because he received it more than ten days after the complaint examiner's decision. Id. at 5. But there is no evidence that the plaintiff *filed* his appeal more than ten days after the complaint examiner issued the decision rejecting his complaint. The evidence shows only that the Warden did not *receive* the appeal until more than ten days later, and he rejected it as untimely on that basis.

The court recently encountered this same situation in a different case involving a different person also incarcerated at Waupun. See Durley v. Kacyon, No. 21-cv-154-pp, 2022 WL 16530885 (E.D. Wis. Oct. 29, 2022). In that case, the incarcerated person filed a complaint about being denied medical treatment after a nearby incarcerated person was sprayed with incapacitating chemicals. Id. at *2. On January 13, 2021, an institutional complaint examiner rejected the complaint under Wis. Admin. Code §DOC 310.06(6)(c) because it "lacks merit or is otherwise frivolous." Id. The plaintiff received the rejection on January 14, 2021, and filed an appeal dated January 17, 2021. Id. But the complaint examiner's office did not receive the appeal until ten days later, on January 27, 2021. Id. On February 5, 2021, the reviewing authority rejected the plaintiff's appeal as untimely because it was received "Beyond 10 calendar day limit." Id.

The court concluded that the reviewing authority improperly rejected the plaintiff's complaint appeal as filed beyond the ten-day limit to do so:

> It is undisputed the plaintiff's appeal is dated January 17, 2021. It also is undisputed the reviewing authority did not receive

the plaintiff's appeal until January 27, 2021—fourteen days after the complaint examiner rejected the complaint. Neither party explains this ten-day discrepancy. The plaintiff's institutional complaints show a similar discrepancy. The plaintiff signed complaint WCI-2021-59 on December 18, 2020, but the complaint examiner did not receive it until January 4, 2021. The plaintiff signed complaint WCI-2021-553 on December 23, 2020, but the complaint examiner did not receive it until January 11, 2021. . . .

The plaintiff filed his institutional complaint on December 23, 2020—only two days before the prison likely took a holiday break. That *could* explain why the complaint examiner did not receive the complaint until well into the new year. The plaintiff speculates that this is the case, but there is no *evidence* in the record confirming that occurred. The day the plaintiff signed his appeal—January 17, 2021—was a Sunday, and the next day was a federal holiday (Dr. Martin Luther King Day). Again, that *could* explain why the reviewing authority may not have received the plaintiff's appeal for an extra day or two. But there is no *evidence* in the record to confirm or deny that. Even if there were, it is hard to determine why a one-day federal holiday would create a ten-day delay in receiving internally mailed grievances or appeals.

The reason for the delay matters because, as noted, it is the defendant's burden to prove that the plaintiff failed to exhaust his administrative remedies. See Pavey, 544 F.3d at 740–41. That means the defendant must present evidence showing the plaintiff did not timely appeal the rejection of his complaint. The court must construe the facts in the light most favorable to the plaintiff as the non-moving party. See Anderson, 477 U.S. at 255. In her reply, the defendant asserts that the plaintiff's "claim that he timely filed an appeal is contradicted by the uncontroverted evidence which demonstrates that he did not." That misstates the record. The *only* evidence in the record of the date on which the plaintiff filed his appeal is the appeal itself, which is dated January 17, 2021, and his declaration that that is the correct date. The envelope the plaintiff says he used to file his appeal is not in the record. The defendant has presented no evidence in support of her position that the plaintiff did not timely file his appeal of his rejected complaint. She provides evidence only that the reviewing authority did not *receive* the plaintiff's appeal until January 27, 2021—several days too late. But the day the reviewing authority *received* the plaintiff's appeal is not the same as the day he *filed* it.

The court finds that the defendant has presented no evidence showing the plaintiff filed his complaint appeal beyond the ten-day limit to do so. The evidence shows that the plaintiff timely filed his appeal on January 17, 2021. The reviewing authority should not have rejected the appeal as untimely.

Id. at *7–*9 (internal record citations omitted).

The court reaches the same conclusion here. The defendants have presented no evidence that the plaintiff filed his complaint appeal beyond the ten-day limit to do so. The only evidence of the date on which the plaintiff filed his appeal is the appeal itself, and that shows that the plaintiff timely filed his appeal on February 10, 2021—only seven days after the complaint examiner rejected the complaint. The Warden should not have rejected the plaintiff's appeal as untimely based on the date he *received* the plaintiff's appeal because there is no evidence that the plaintiff untimely *filed* the appeal.

But unlike in Durley, here the Warden's error is inconsequential. It is undisputed that the plaintiff filed his institutional complaint well after the fourteen-day deadline had elapsed, and the complaint examiner properly rejected it as untimely. As noted above, a complaint rejected as untimely cannot serve to exhaust administrative remedies. See Conyers, 416 F.3d at 584. Even if the plaintiff had timely filed complaint WCI-2021-1961, and even if the Warden had properly considered the timely appeal, the complaint discusses only defendant Turner's alleged mishandling of the plaintiff's medical emergency. It does not allege that any other officer was involved or failed to treat his medical emergency (or any other claim). The plaintiff has voluntarily withdrawn his claim against Turner, and the court is dismissing her as a

20

defendant. The fact that prison staff mishandled the plaintiff's appeal from this complaint does not change that outcome and does not serve to exhaust his administrative remedies for any other claim against any defendant.[3]

## III. Conclusion

The court **GRANTS** the plaintiff's motion to withdraw. Dkt. No. 24.

The court **DISMISSES** defendant Bryanna Turner without prejudice. The court **DIRECTS** the Clerk of Court must update the spelling of defendant Turner's first name to "Bryanna."

The court **FINDS** that the defendants have satisfied their burden to show that the plaintiff failed to exhaust his administrative remedies for his claims against defendants Mark Puterbaugh, Nicholas Sanchez, Thomas Nelson, Peter Wasyliw, Kaitlyn Gould and Tanner Leopold[4] before bringing this lawsuit.

The court **GRANTS** the defendants' motion for partial summary judgment. Dkt. No. 19.

The court **DISMISSES** defendants Puterbaugh, Sanchez, Nelson, Wasyliw, Gould and Leopold and the plaintiff's claims against them without prejudice.

---

[3] Because the plaintiff did not comply with the court's order and has not disputed the defendants' proposed facts, there is "no reason to conduct an evidentiary hearing" under <u>Pavey v. Conley</u>, 544 F.3d 739 (7th Cir. 2008). <u>Aguirre v. Witek</u>, No. 08-C-1110, 2010 WL 1292161, at *2 (E.D. Wis. Mar. 30, 2010) (quoting <u>Doss v. Gilkey</u>, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009)).

[4] The court also has concluded that the plaintiff did not exhaust his claims against Turner, but that conclusion is moot because the court is granting the plaintiff's motion to voluntarily dismiss Turner as a defendant.

The court will issue a separate order amending the deadlines for the plaintiff and defendant Birdyshaw to conduct discovery and to file dispositive motions on the merits, if they choose.

Dated in Milwaukee, Wisconsin this 11th day of June, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**United States District Judge**